UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PEABODY ESSEX MUSEUM, INC., )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES FIRE INSURANCE )<br>COMPANY, )<br>    Defendant. ) | Civil Action No. 06cv11209-NG |

GERTNER, D.J.:

### MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT MOTIONS
### August 24, 2011

**A.    Defendant U.S. Fire Insurance Company's Motion for Partial Summary Judgment on Allocation (document #171)**

After my September 30, 2010, Memorandum and Order on the Allocation of Damages (document #161), two issues remained: 1) the allocation period end date; and 2) the allocation method. The parties subsequently agreed that the pollutants have continued to migrate through the soil until today. Under the circumstances, the start date for the allocation period is December 19, 1983 (the first day of U.S. Fire's policy), and the end date is present day. With respect to allocation method, U.S. Fire Insurance Co. ("U.S. Fire") has moved for partial summary judgment, claiming that this Court should use the "time-on-the-risk" method, which would result in a finding that U.S. Fire owes only ten percent of the remedial costs claimed by plaintiff Peabody Essex Museum, Inc. ("the Museum").

In Boston Gas v. Century Indemnity Co., the Massachusetts Supreme Judicial Court ("SJC") characterized "time-on-the-risk" as the default allocation method. 454 Mass. 337, 370 (2009). Under the "time-on-the-risk" method, "each triggered policy bears a share of the total damages [up to its policy limit] proportionate to the number of years it was on the risk [the numerator], relative to the total number of years of triggered coverage [the denominator]." Id. at

367 (quoting 23 E.M. Holmes, Appleman on Insurance § 145.4[A][2][b], (2d ed. 2003)).  But, as the Museum argues, Boston Gas also identified "fact-based" allocation, under which courts "determine precisely what injury or damage took place during each contract period or uninsured period and allocate the loss accordingly," as the "ideal method" for allocating coverage.  Id. at 367.  This "fact-based" method, however, is appropriate only when the evidence permits an "accurate allocation of losses during each policy period."  Id. at 370.

The Museum offers two reports as evidence supporting a fact-based allocation.  The first is authored by geotechnical engineer Peter Riordan ("Riordan"), who used two independent methods to estimate the volume of soil that was contaminated during the two-year period that U.S. Fire insured the Museum.  Riordan Evaluation of Oil Release, Aylward Aff., Ex. B [hereinafter "Riordan Eval"] (document #174-2).  The second comes from Glen Gordon ("Gordon"), who oversees and manages the selection, design, installation, operation, and maintenance of the remedial systems intended to clean up the petroleum contamination at the site.  Gordon Report, Aylward Aff., Ex. C [hereinafter "Gordon Report"], at 1 (document #174-3).

The Museum asked Gordon to develop a cost estimate for a remediation of the soil that Riordan had identified as contaminated during the two-years of U.S. Fire insurance.  Id. 1-4.  In determining whether this evidence on the spread of the oil and the cost of remediation are sufficiently "accurate" in this case to warrant use of a "fact-based" method, I bear in mind that U.S. Fire has the burden of proof.  See Polaroid Corp. v. Travelers Indem. Co., 414 Mass. 747, 764 (1993).  Having reviewed Riordan's data, methodology, and analysis, I find credible and accurate his conclusion that between December 19, 1983 (the first day of U.S Fire's policy), and

December 19, 1985 (the last day of the U.S. Fire policy), 9,000 cubic feet of soil would have been contaminated. Riordan Eval. at 6. (This amount of soil "represents 33% of the 27,000 cubic feet of soil contaminated as of [the] date of discovery." Id.) I find similarly credible and accurate Gordon's calculation that the Museum will incur between $1.1 and $1.5 million to remediate this area. Gordon Report at 8. Accordingly, the evidence permits a "fact-based" allocation," so the "time-on-the-risk" default method does not apply. U.S. Fire must indemnify the Museum for the cost of cleaning up the 9,000 cubic feet of soil damaged during U.S. Fire's policy, as identified by Riordan.

For the reasons stated above, U.S. Fire's Motion for Partial Summary Judgment (**document #171**) is **DENIED**.  --

**B.  Peabody Essex Museum's Motion for Summary Judgment on G.L. C. 93A (document #186)**

Mass. Gen. Laws ch. 176D, § 3 is a consumer-oriented law designed to deter insurers from committing a host of possible violations and to provide the insured with the remedies available under Mass. Gen. Laws ch. 93A for unfair or deceptive business practices. Hopkins v. Liberty Mut. Ins. Co., 434 Mass. 556, 562 (2001). In particular, § 3(9)(f) penalizes those insurers whose conduct has "stymied those with bona fide claims from obtaining fair settlements in a reasonably prompt time." Id. Accordingly, the statute prohibits an insurer from "[f]ailing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." Mass. Gen. Laws ch. 176D, § 3 (9)(f). In this case, U.S. Fire's liability with respect to its duty to defend the Museum against the Notice of Responsibility ("NOR") has been clear since December 19, 2007, when I found that, under Hazen Paper Co. v. U.S. Fid. & Guar. Co., 407 Mass. 689 (1990), and its progeny, the NOR constituted a suit sufficient to trigger

Defendants duty to defend. 12/19/2007 Elec. Order Granting in Part Mot. Summ. J. Indeed, in my order, I found that U.S. Fire had "conceded as much." Id. U.S. Fire's liability was clear at the time even though it seeks to appeal my finding of its duty to defend. As I previously explained, the NOR was reasonably susceptible of an interpretation that the release of pollutants was sudden and accidental and fell within the insurance policy's term of coverage. See Liberty Mut. Ins. Co. v. SCA Servs., Inc., 412 Mass. 330, 334 (1992); Arrow Automotive Indus., Inc. v. Liberty Mut. Ins. Co., No. CIV. A. 94-0847, 1998 WL 52274, at *8 (Mass. Super. Jan. 29, 1998). Since December 19, 2007, U.S. Fire has failed to reimburse the Museum with respect to the costs and fees the Museum has incurred defending against the NOR. As of June 10, 2009, U.S. Fire had reimbursed the Museum only $133,131 of the $491,992 the Museum had then amassed in legal costs and fees. Moreover, U.S. Fire and the Museum have not reached a fair settlement for the remaining amount , forcing the Museum to litigate its valid claim for unreimbursed defense costs and fees. Accordingly, U.S. Fire has violated Mass. Gen. Laws ch. 176D, § 3(9)(f), and the Museum's motion for Summary Judgment on 93A Claims (**document #186**) is **GRANTED**.

Under Chapter 93A, the Museum is entitled to damages "in the amount of actual damages; or up to three, but not less than two, times such amount if the court finds that the use or employment of the method of competition or the act or practice was a willful or knowing violation." Mass. Gen. Laws ch. 93A, § 11. Because U.S. Fire's failure to effect a fair settlement with respect to the costs the Museum has paid defending against the NOR was both willful and knowing, I award the Museum twice its actual damages – the amount of unreimbursed NOR legal defense fees and costs. See R.W. Granger & Sons, Inc. v. J & S insulation, Inc., 435 Mass.

66, 83 (2001) ("Multiple damages are the "appropriate punishment" for forcing plaintiffs to litigate clearly valid claims.").

The Museum is **ORDERED** to provide an accounting of these damages by September 5, 2011, and U.S. Fire's response is due by September 19, 2011.

As stated above, U.S. Fire's Motion for Partial Summary Judgment (**document #171**) is **DENIED** and Peabody Essex Museum's Motion for Summary Judgment on G.L. C. 93A (**document #186**) is **GRANTED**.

**SO ORDERED.**

**Date: August 24, 2011**  */s/ Nancy Gertner*
**NANCY GERTNER, U.S.D.J.**