United States District Court
District of Massachusetts

```
_____
                                 )
PEABODY ESSEX MUSEUM, INC.,      )
        Plaintiff,               )
                                 )
        v.                       )      Civil Action No.
                                 )      06-11209-NMG
U.S. FIRE INSURANCE CO.,         )
        Defendant.               )
_____)
```

MEMORANDUM & ORDER

GORTON, J.

This interminable action involves the allocation of indemnity between an insurance company, defendant United States Fire Insurance Company ("U.S. Fire"), and its former insured, Peabody Essex Museum, Inc. ("the Museum"), for damages caused by an oil spill on the Museum's property.  The oil spill was discovered in 2003 but had originated at some point during the preceding decades.

After two separate rounds of summary judgment motions and one jury trial, the obligation of U.S. Fire to indemnify the Museum was ascertained.  In August, 2011, United States District Judge Nancy Gertner entered a Memorandum and Order which established the allocation method and required U.S. Fire to pay double damages pursuant to M.G.L. c. 93A ("Chapter 93A").  Shortly thereafter, the case was transferred to this Session.

Currently before the Court are the following three motions:

-1-

1) the defendant's motion for reconsideration or rehearing on
Judge Gertner's August, 2011 Memorandum and Order, 2) the
plaintiff's motion for modification of the damages awarded to it
under Chapter 93A and 3) the plaintiff's motion for entry of
judgment.

I.   **Background**

The Museum owns property in Salem, Massachusetts, which abuts
property owned by Heritage Plaza Enterprises ("Heritage").  Prior
to 1978, the Museum has no record of insurance coverage. Between
1978 and 1981, it was insured by Holyoke Mutual Fire Insurance
Company ("Holyoke Insurance"), and between 1980 and 1983, it was
insured by ACE Property & Casualty Insurance Company ("ACE
Insurance").  On January 4, 1984, U.S. Fire issued an insurance
policy to the Museum.  The relevant terms of the policy were in
effect from December 19, 1983, to December 19, 1985.  Although the
policy was effective for another year, an "absolute pollution
exclusion" precluded coverage after December 19, 1985.  Policies
issued after 1986 carried similar pollution exclusions.

The U.S. Fire policy provided, in pertinent part, that the
insurer will pay

> all sums which the insured shall become legally obligated
> to pay as damages because of ... property damage to which
> this insurance applies, caused by an occurrence, and the
> company shall have the right and duty to defend any suit
> against the insured seeking damages on account of such ...
> property damage ....

The policy defined "occurrence" to mean "an accident, including

continuous or repeated exposure to conditions, which results in

... property damage neither expected nor intended from the

standpoint of the insured." It defined "property damage" as:

> (1) physical injury to or destruction of tangible property
> which occurs during the policy period, including the loss
> of use thereof at any time resulting therefrom, or (2)
> loss of use of tangible property which has not been
> physically injured or destroyed provided such loss of use
> is caused by an occurrence during the policy period.

At some point during the past several decades, an oil tank on

the Museum's property leaked, causing oil to migrate to Heritage's

property. Heritage discovered heavy oil on its property in May,

2003 and, upon investigation, determined the oil had come from the

Museum's property. Heritage submitted a demand letter for

$400,000 in cleanup costs to the Museum in October, 2003. In

January, 2004, the Massachusetts Department of Environmental

Protection issued a Notice of Responsibility ("NOR") to the

Museum, instructing it to investigate and clean up the pollution.

U.S. Fire refused to defend the Museum with respect to either

the demand letter or the NOR, and, when the Museum settled the

dispute with Heritage for $300,000 in June, 2005, U.S. Fire

refused to indemnify the Museum for the settlement. Consequently,

the Museum sued U.S. Fire in state court in June, 2006. U.S. Fire

removed the case to this Court in July, 2006, and filed a

third-party complaint against ACE Insurance for contribution.

In December, 2007, Judge Gertner granted partial summary

judgment for the Museum, holding that U.S. Fire breached its duty

to defend the Museum against the NOR.  In March, 2009, she entered another order 1) granting summary judgment in favor of ACE Insurance against U.S. Fire and 2) denying partial summary judgment for the Museum on the issue of when and how the damage to the Museum's property occurred.

The case went to trial on the latter issue with the burden of proof imposed on U.S. Fire.  In June, 2009, the jury returned a verdict which determined that U.S. Fire had not met its burden of proving 1) that the damage occurred _after_ December 19, 1985, when its liability policy ended or 2) the precise date upon which the release of fuel oil first caused property damage.  Judge Gertner denied U.S. Fire's motion for judgment notwithstanding the verdict.

After trial, the parties' attempts at mediation failed.  Both parties thus submitted a stipulated set of facts and memoranda on the issue of the allocation of indemnity between them, including the appropriate allocation period and the division of damages incurred during that period.  In September, 2010, Judge Gertner held that the appropriate start date of the allocation period was the first day U.S. Fire's policy in favor of the Museum became effective.  She reserved judgment, however, on 1) the appropriate end date of the allocation period and 2) the appropriate allocation method, finding that both issues could not be decided on the record before her.  To resolve them, she concluded, would

-4-

require a second jury trial unless the parties could agree to present the issues directly to the Court.

Thereafter, the parties submitted a joint pretrial memorandum summarizing their respective positions as to the allocation issue. They characterized the dispute as a legal question appropriate for the Court to decide and stipulated to the pertinent undisputed facts.  The only contested issue of fact was whether the methodology and opinions of two of the Museum's experts, Glen Gordon and Peter Riordan, was reliable and should be admitted at trial.

The parties then filed cross-motions for partial summary judgment on the issue of the allocation method and the Museum filed a motion for summary judgment that, through its unfair claims settlement practices, U.S. Fire knowingly and willfully violated Chapter 93A.

In August, 2011, Judge Gertner found in favor of the Museum on both issues.  Shortly thereafter, U.S. Fire moved for reconsideration of that decision, and the Museum moved for entry of final judgment and for reconsideration of the Court's decision to grant double, rather than treble, damages under Chapter 93A.

In late September, 2011, the case was reassigned to this Session.  In March, 2012, the Court denied the Museum's motion for reconsideration of the damages awarded under Chapter 93A.  The same day that motion was denied, the Museum filed a second motion

to modify the damages awarded under Chapter 93A pursuant to <u>Rhodes</u> v. <u>AIG Domestic Claims, Inc.</u>, 461 Mass. 486 (2012), a decision entered by the Massachusetts Supreme Judicial Court in February, 2012.

## II. <u>Analysis</u>

### A. Defendant's Motion to Reconsider

#### 1. Legal Standard

Granting a motion for reconsideration is "an extraordinary remedy which should be used sparingly." <u>Palmer</u> v. <u>Champion Mortg.</u>, 465 F.3d 24, 30 (1st Cir. 2006). Generally, a motion for reconsideration will be allowed only if the movant presents newly discovered evidence, shows there has been an intervening change in the law or demonstrates "that the original decision was based on a manifest error of law or was clearly unjust." <u>Noel</u> v. <u>Walt Disney Parks & Resorts U.S., Inc.</u>, No. 10-40071, 2011 WL 6258334, at *1 (D. Mass. 2011) (Saylor, J.). Such motions are not vehicles for pressing arguments which could have been asserted earlier or for "re-arguing theories previously advanced and rejected." <u>Palmer</u>, 465 F.3d at 30. The granting of such a motion is "an extraordinary remedy which should be used sparingly." <u>Id.</u>

#### 2. Application

Here, defendant offers no new evidence or intervening law but instead contends that the Court committed manifest legal error by 1) determining the appropriate allocation method and 2) allowing

-6-

summary judgment in favor of the Museum on its Chapter 93A claims. To be successful with respect to that motion, defendants must demonstrate that the Court has "patently misunderstood a party" or committed "an error not of reasoning but apprehension," meaning that it has misapprehended some material fact or point of law. Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 82 (1st Cir. 2008).

> a.   Allocation Method

The parties' dispute over the appropriate allocation method concerns whether to apply the "time-on-the-risk" method or the "fact-based" method of allocation.

U.S. Fire asserts that the Court should apply the "time-on-the-risk" allocation method which involves use of a mathematical equation to allocate losses to each insurance policy in effect while the risk of injury was on the insured.  Boston Gas Co. v. Century Indemn. Co., 454 Mass. 337, 367 (2009). Specifically,

> each triggered policy bears a share of the total damages [up to its policy limit] proportionate to the number of years it was on the risk [the numerator], relative to the total number of years of triggered coverage [the denominator].

Id.  The time-on-the-risk method is the "default allocation method" which is used "where the evidence will not permit a more accurate allocation of losses during each policy period."  Id.

By contrast, the "fact-based" method, which the Museum argued

should apply, is the "ideal allocation method" to be used where
the evidence permits an "accurate allocation of losses during each
policy period." Id. at 370. Under the fact-based method, courts

> determine precisely what injury or damage took place
> during each contract period or uninsured period and
> allocate the loss accordingly.

Id. at 367.

The Court determined the fact-based method applied after
considering two expert reports offered by the plaintiff supporting
a fact-based allocation: one from Peter Riordan ("Riordan"), a
geotechnical engineer who estimated the volume of soil that was
contaminated during the period that U.S. Fire insured the Museum,
and a second from Glen Gordon ("Gordon"), the Licensed Site
Professional overseeing the cleanup, who calculated (based on
Riordan's estimate of the soil contaminated) how much U.S. Fire
owed the Museum in cleanup costs.

Riordan estimated that about one-third of the soil that
ultimately became contaminated was polluted by the time U.S.
Fire's coverage period expired in December, 1985. Relying on that
estimate, Gordon assigned to U.S. Fire 1) 43% of any cleanup cost
that was contingent on the size of the contamination ("variable
cleanup costs") and 2) 100% of any cleanup cost not contingent on
the size of the contamination ("fixed cleanup costs"). Examples
of the latter include the cost of certain equipment, permits and
analyses that would have had to be undertaken no matter how

expansive the property contamination was.

Judge Gertner concluded that those reports supported the Museum's contention that a fact-based allocation method should apply.  She found that:

> In determining whether [the expert reports] on the spread of the oil and the cost of remediation are sufficiently "accurate" in this case to warrant use of a "fact-based" method, I bear in mind that U.S. Fire has the burden of proof.  Having reviewed Riordan's data, methodology, and analysis, I find credible and accurate his conclusion that between December 19, 1983 (the first day of U.S Fire's policy), and December 19, 1985 (the last day of the U.S. Fire policy), 9,000 cubic feet of soil would have been contaminated. I find similarly credible and accurate Gordon's calculation that the Museum will incur between $1.1 and $1.5 million to remediate this area. Accordingly, the evidence permits a "fact-based" allocation," so the "time-on-the-risk" default method does not apply.  U.S. Fire must indemnify the Museum for the cost of cleaning up the 9,000 cubic feet of soil damaged during U.S. Fire's policy, as identified by Riordan.

U.S. Fire contends that the Court committed manifest error in arriving at that conclusion by 1) improperly imposing a burden of proof on U.S. Fire, 2) adopting expert opinions that rested on disputed questions of fact, 3) failing to afford U.S. Fire an opportunity to challenge the accuracy and veracity of the expert opinions and 4) allowing 100% of fixed costs to be assigned to U.S. Fire.  Furthermore, U.S. Fire proposes to offer evidence of the Museum's settlement with another entity in which different cost assumptions were applied.

First, no manifest legal error was committed with respect to U.S. Fire's burden of proof on the allocation method.  The record

as a whole demonstrates that the Court placed an initial burden on the Museum to produce credible evidence supporting a fact-based allocation.  Upon the presentation of sufficient evidence thereof, the burden shifted to U.S. Fire to rebut the Museum's evidence, consistent with U.S. Fire's overarching burden of proof with respect to the existence and scope of its duty to indemnify.  Such an approach appears generally consistent with state law.  See Boston Gas Co., 454 Mass. at 367-71; Polaroid Corp. V. Travelers Indem. Co., 414 Mass. 747, 764 (1993).

Second, both the reliability of the experts' methods and conclusions and objections to the purported factual issues underlying those conclusions were extensively briefed by the parties.  Each side agreed that the Court could and should resolve the allocation method dispute based upon such briefing.  Although U.S. Fire requested a Daubert hearing in the event that the Court concluded a fact-based allocation method was appropriate, it was within the Court's discretion to deny such a request. Furthermore, U.S. Fire has not offered, in support of its motion for reconsideration, any evidence of unreliability that was not already before the Court at the time it determined that the expert conclusions were credible and accurate.  In sum, U.S. Fire had ample opportunity to challenge the expert reports but simply lost the argument, and there is no discernible manifest error in the Court's decision to rely on the expert reports.

Finally, U.S. Fire contends that the Court erred by adopting the expert's conclusion that U.S. Fire should pay 100% (rather than the 43%) of the fixed cleanup costs.  U.S. Fire asserts that those costs, along with all the other cleanup costs, should have been evenly distributed throughout the period of property damage. The Museum responds that assigning the full amount of fixed cleanup costs is consistent with the policy language insofar as U.S. Fire agreed to pay "all sums [the Museum] shall become legally obligated to pay as damages" for "property damage" which occurs "during the policy period."

The rationale for charging the full amount of fixed cleanup costs to U.S. Fire is easily discernable.  Because any cleanup effort would require such expenditures, regardless of the size of the contamination, they should be charged to U.S. Fire in full insofar as U.S. Fire promised to compensate the Museum for "all sums" associated with property damage during the policy period. Such a rationale does not, however, accord with the reasons expressed by Massachusetts Supreme Judicial Court ("the SJC") for implementing a pro rata, rather than joint and severally liable, default allocation system in complicated environmental damages suits.  In Boston Gas Co., the SJC explained that such a method is the fairest method of apportioning damages between an insurer and insured:

> pro rata allocation produces a more equitable result than
> joint and several allocation, which creates a false

equivalence between an insured who has purchased insurance
coverage continuously for many years and an insured who
has purchased only one year of insurance coverage.

454 Mass. at 365 (internal quotation omitted).  The SJC also
particularly warned against placing undue emphasis on "all sums"
policy language and overlooking "the limitation that the phrase
'during the policy period' places on the scope of coverage."  Id.
at 360.

Here, to assign all of the "fixed costs" to U.S. Fire
subverts the equitable result achieved by pro rata allocation and
results in an unjust windfall for the Museum.  Boston Gas makes
clear that courts are not to distinguish between insured and
uninsured periods in allocating loss.  See id. at 365.  There is
thus no meaningful reason to differentiate between "fixed" and
"variable" costs, or to front-load only the former onto U.S. Fire.

The Court will therefore allow the defendant's motion to
reconsider that portion of the prior order that allocates 100%
(rather than 43%) of the "fixed" cleanup costs to U.S. Fire.

b.   Chapter 93A

Defendant also moves for reconsideration of the Court's
decision to allow summary judgment in favor of the plaintiff with
respect to the plaintiff's Chapter 93A claims.  Defendant contends
that the Court committed manifest legal error by failing to
address defendant's various legal defenses to that claim and
failing to explain upon which facts its decision rested.

-12-

Neither argument is meritorious.  The Court determined that the defendant's liability with respect to its duty to defend the Museum against the NOR had been clear since December, 2007, when the Court held that the NOR triggered the defendant's duty to defend and was reasonably susceptible of an interpretation that the release of pollutants was sudden and accidental.  Yet, by June, 2009, the defendant had reimbursed the plaintiff only approximately $9,000 of the $500,000 in costs and fees plaintiff had incurred in defending against the NOR.[1]  Moreover, as the Court noted, the parties had not reached a fair settlement for the remaining amount which forced the Museum to litigate its claim for reimbursement.

Judge Gertner concluded that the Museum was entitled to twice its actual damages (the amount of unreimbursed NOR legal defense fees and costs)

> because U.S. Fire's failure to effect a fair settlement with respect to the costs the Museum has paid defending against the NOR was both willful and knowing.

Although Judge Gertner did not elaborate extensively upon why she found the Museum's conduct willful and knowing, the basis for her decision is apparent from the undisputed facts, the plaintiff's motion for summary judgment and Judge Gertner's prior rulings.  No

---

[1]  In her Memorandum and Order, Judge Gertner mistakenly found that U.S. Fire had reimbursed the Museum $133,131 as of June 10, 2009.  The record has since been corrected to reflect that U.S. Fire has paid only $9,058.03.

manifest legal error was committed and the Court's decision will not be reconsidered.

## B. Plaintiff's Motion for Modification of Damages Awarded Under Chapter 93A

Plaintiff moves for modification of damages awarded to it under Chapter 93A in light of a recent decision of the SJC in Rhodes v. AIG Domestic Claims, Inc., 461 Mass. 486 (2012).  In essence, plaintiff's motion is one for reconsideration in light of what it perceives to be a controlling change in the law.  Because this Court perceives no such change, the motion will be denied.

In Rhodes, the SJC held that the "actual damages" to be multiplied for an insurer's willful and knowing post-judgment violation of Chapter 93A is the amount of the underlying tort judgment against the insurer.  It overruled the lower courts' decision to award only loss-in-use damages, concluding that each had misread 1) the plain language of the 1989 amendment to Chapter 93A and 2) the SJC's decision in R.W. Granger & Sons, Inc. v. J&S Insulation, Inc., 435 Mass. 66, 82 (2001) ("'[A]ctual' damages shall be taken to be the amount of the judgment for the purposes of bad fath multiplication.").  Thus, in Rhodes, the SJC did not break new ground or indicate a change in law but rather reaffirmed its prior precedent interpreting the plain statutory text of Chapter 93A to require that a willful violator pay multiples of the amount of the underlying judgment.

Although the plaintiff, in its summary judgment motion,

-14-

requested that the Court award it a multiple of the entire judgment to which it would otherwise be entitled, it presented no analysis or argument to support that amount of damages. Plaintiff was free at the time to pursue such an argument, based on the statutory language and the Granger decision, but did not. Instead, plaintiff raised that argument at the conclusion of this litigation and on the same day the Court denied plaintiff's first motion for reconsideration of the Chapter 93A damages award.

"When faced with a motion for reconsideration, a district court must balance the need for finality against the duty to render just decisions." Davis v. Lehane, 89 F. Supp. 2d 142, 147 (D. Mass. 2000). It has been oft-emphasized that

> [m]otions for reconsideration are not to be used as a vehicle for a party to undo its own procedural failures or allow a party to advance arguments that could and should have been presented to the district court prior to judgment.

United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009) (internal quotation omitted). By its motion for modification, plaintiff seeks to raise arguments that it could, and should, have raised in its motion for summary judgment. Accordingly, the motion will be denied.

### C.   Plaintiff's Motion for Entry of Judgment

Plaintiff's motion for entry of judgment will be denied as moot in light of this Court's reconsideration of the appropriate percentage of "fixed" clean-up costs chargeable to the defendant.

-15-

With respect to the two remaining "discrete objections" of the
defendant to plaintiff's motion for entry of judgment, i.e., that
plaintiff unjustly 1) seeks reimbursement of costs incurred by
ENSR International and 2) calculates prejudgment interest from a
date before the pertinent bills were provided to U.S. Fire., the
Court will hear argument from counsel at the scheduled status
conference on Thursday, July 26, 2012 at 2:30 p.m.

### ORDER

In accordance with the foregoing,

1) defendant's Motion for Reconsideration (Docket No. 200)
   is **ALLOWED**, in part, and **DENIED**, in part, and, upon
   reconsideration, plaintiff is awarded 43% of its "fixed"
   cleanup costs;

2) plaintiff's Motion to Modify Damages Awarded Under
   Chapter 93A (Docket No. 211) is **DENIED**; and

3) plaintiff's Motion for Entry of Judgment (Docket No.
   202) is **DENIED** as moot.

**So ordered.**

                                    /s/ Nathaniel M. Gorton
                                   Nathaniel M. Gorton
                                   United States District Judge
Dated July 18, 2012