United States District Court
District of Massachusetts

```
_____
                            )
PEABODY ESSEX MUSEUM, INC.,  )
        Plaintiff,           )
                             )
        v.                   )    Civil Action No.
                             )    06-11209-NMG
U.S. FIRE INSURANCE CO.,     )
        Defendant.           )
_____ )
```

MEMORANDUM & ORDER

GORTON, J.

Plaintiff Peabody Essex Museum, Inc. ("the Museum") moved for final judgment against defendant United States Fire Insurance Company ("U.S. Fire") in September, 2011 and submitted an accounting of damages (exclusive of pre-judgment interest and attorneys' fees and costs).  U.S. Fire filed an opposition which took issue with four aspects of the Museum's accounting.  The Museum relented on two of the four issues U.S. Fire raised but two remain for the Court's resolution.  Specifically, U.S. Fire objects to 1) the belated attempt of the Museum to recover one-third of the cleanup costs incurred by its original environmental consultant and licensed professional, ENSR International, and 2) the calculation of prejudgment interest from a date prior to when invoices were submitted to U.S. Fire for reimbursement.

The Court heard oral argument on those issues at a status conference on July 26, 2012 and took the matter under advisement.

-1-

It now resolves the dispute.

## I.   ENSR International Clean-up Costs

The Museum retained ENSR International after it received a demand for clean up costs from its neighbor, Heritage Plaza Enterprises ("Heritage").  ENSR International initiated a "Phase I site investigation" as required by Massachusetts law, the results of which prompted the Massachusetts Department of Environmental Protection to instruct the Museum to clean up the site.  After the Museum settled the Heritage claim, it replaced ENSR International with Roux Associates, Inc. ("Roux") to continue the ongoing clean up.

Subsequently, U.S. Fire was held by this Court to be liable for reimbursing a portion of the Museum's clean-up costs and the Museum argued that those costs should be allocated pursuant to a "fact-based" allocation method.  In support, the Museum submitted two expert reports: one from Peter Riordan ("Riordan"), a geotechnical engineer who estimated the volume of soil which was contaminated during the period that U.S. Fire insured the Museum, and a second from Glen Gordon ("Gordon"), the Licensed Site Professional overseeing the Roux cleanup, who calculated how much U.S. Fire owed the Museum in cleanup costs.

Riordan estimated that about one-third of the soil that ultimately became contaminated was polluted by the time U.S. Fire's coverage expired in December, 1985.  Relying on that

estimate and his own experience in the Roux clean-up effort,
Gordon assigned to U.S. Fire 43% of the Museum's "variable"
cleanup costs but 100% of "fixed" clean-up costs, i.e., those
costs that were not contingent on the extensiveness of the oil
contamination.[1]  The Court found both expert opinions to be
credible and to justify a fact-based allocation method.

The Museum's cost expert, Gordon, did not address the
cleanup costs of ENSR International in his report.  Nonetheless,
in its motion for final judgment, the Museum seeks $38,317 for
one-third of the clean-up work performed by that entity.
Plaintiff contends that the one-third estimate is reasonably
based upon Riordan's conclusion that one-third of the property
was contaminated while the U.S. Fire policy was effective.
Defendant responds that the Museum may not recover such costs
when its cost expert has not addressed them and has, instead,
analyzed the Roux clean-up strategy only.  The Roux strategy,
defendants point out, is fundamentally contrary to that employed
by ENSR International.

The Court agrees with the defendant.  Equating one-third of
the property contamination to one-third of the ENSR clean-up
costs is highly speculative, especially when contrasting that
approach to Gordon's detailed analysis and calculation of the

---

[1] In its July, 2012 Order, however, this Court held that
only 43% of <u>all</u> clean-up costs are chargeable to the defendant.

-3-

appropriate allocation of the Roux cleanup costs.  Indeed, the
Court adopted a fact-based allocation based upon <u>both</u> the Riordan
and Gordon reports.  To now adopt an <u>ad hoc</u> and relatively
unsubstantiated estimate based upon only the former does not
support a fact-based allocation.

## II.  **Calculation of Pre-Judgment Interest**

Apparently, most invoices from 2006, 2007 and early 2008
were not submitted to U.S. Fire for reimbursement until April,
2008.  U.S. Fire argues that to require it to pay pre-judgment
interest on those bills beginning in 2006 and 2007 would be
unreasonable.  It requests that the Court direct the Museum to
calculate prejudgment interest from the dates the invoices were
presented to U.S. Fire rather than the dates they were paid.

The Museum responds that, under Massachusetts law,
prejudgment interest is appropriately calculated from the date of
the Museum's payment, i.e., when it was deprived of the funds,
rather than the date bills were tendered to the defendant.  It
adds that providing the bills on an earlier date would have been
futile considering U.S. Fire's persistent pattern of non-payment
since April, 2005.

The relevant statute provides that a court "shall" add
interest to damages in contract actions either from "the date of
the breach or demand" or, if the date of breach or demand is not
established, "from the commencement of the action".  M.G.L. c.

231, § 6C.  Nonetheless, an award of prejudgment interest is made "so that a person wrongfully deprived of the use of money" is "made whole for his loss" and should not result in a windfall for the plaintiff.  <u>Bank</u> v. <u>Thermo Elemental Inc.</u>, 451 Mass. 638, 662 (2008).  Thus,

> when expenses incurred as a result of a contract breach are not paid by a plaintiff until after the breach has occurred, the interest is calculated not from the date of the breach or even the date the action was commenced, as the plain language of the statute would require, but from the date or dates on which the plaintiff made such payments.  This avoids the windfall that would otherwise be created for the plaintiff were courts to allow interest to accrue from the date of breach even when the plaintiff does not lose the use of funds until much later.

<u>Id.</u> at 662-63.

Applying that logic here, and considering U.S. Fire's pattern of nonpayment, the Court concludes that the Museum is entitled to reimbursement of prejudgment interest from the date of its payments of those costs.  For the sake of simplicity, however, the Court will adopt the approach taken in <u>Bank</u> v. <u>Thermo Elemental Inc.</u> and calculate interest from the last day of the year in which each invoice was paid by the Museum.  451 Mass. at 663.

### ORDER

In accordance with the foregoing, the Court determines that the Museum is not entitled to one-third of the cleanup costs incurred by ENSR International but that prejudgment interest runs

from the last day of the year in which each invoice was paid by
the Museum.  The Museum shall file, on or before August 31, 2012,
a revised motion for entry of final judgment consistent with this
finding.


**So ordered.**

                                      /s/ Nathaniel M. Gorton
                                      Nathaniel M. Gorton
                                      United States District Judge

Dated August 7, 2012